J. A. ROGERS, Doing Business Under Firm Name of
NEOSHO FOUNDRY AND MACHINE WORKS, Appellant,
v. C. C. C. MINING COMPANY and LOREN K.
WRIGHT, Respondent.

St. Louis Court of Appeals, April 29, 1898.

Mechanic's Lien: LEASE OF LAND FOR MINING PURPOSES: EFFECT OF.
The plaintiff under a contract made with the superintendent and
vice-president of a mining company furnished the material and
erected in this plant an elevator at the contract price of $177.50.
This elevator was connected with the main shaft in the building,
was nailed fast to the frame work of the building, and was a necessary
improvement to the plant. The mining company held the premises
under an assigned lease for twenty years "for the purpose of mining
the same for lead and zinc and all other valuable minerals with the
right to use the surface thereof in any and all ways necessary or
proper in carrying on the operations of mining and reducing and
preparing for market any and all ores obtained therefrom, and the
right of way thereto over any and all other lands owned or controlled
by the parties of the first part. · *Held*, that a mechanic's lien could
be established upon said ground, and that the above lease was as
effectual to demise the surface as it was to demise the minerals under
the surface.

*Appeal from the Lawrence Circuit Court.*—HON.
JOHN C. LAMSON, Judge.

REVERSED AND REMANDED *(with instructions)*.

CRAVENS & CRAVENS for appellant.

The legal effect of the instruments is to vest the
defendant company with a leasehold in the land.
Plaintiff contends that the C. C. C. Mining Company
is vested with a lessee's interest in the one acre against
which he seeks to establish his mechanic's lien. If
such interest exists then plaintiff should have judgment
enforcing the lien. R. S. 6708. The lower court

found against this theory. In order to determine what was transferred by the three instruments under which the defendant company acquired its vested rights it is necessary to ascertain the intention of the parties from the words employed, giving due effect to all parts of the instruments, and the construction placed upon the contracts by the parties themselves. In the tripartite contract of lease the Stotts heirs "demise and let" the land to the Mt. Vernon Company; and this company sublets the land and does "demise and let" it to Hamar. Providing, further, that he shall continuously mine such land in a thorough, efficient and business-like way to render the largest possible returns to all the parties thereto. Upon forfeiture by Hamar the Mt. Vernon Company "agrees to take possession and charge of said premises and thereafter proceed to mine the same." In the sub-lease from Hamar to Mergendollar he does "demise and lease" the land to him with the express right to "use of the surface thereof," and Mergendollar agrees to "operate the land" continuously. The assignment from Mergendollar to the company transfers the "leasehold and property." The terms of these instruments leave no doubt that the defendant company was to have possession of the premises for twenty years at a fixed royalty. The legal understanding of a lease for years, is a contract for the possession and profits of land for a determinate period, with the recompense of rent. If reserved in kind, as in this case, it is rent in contemplation of law. U. S. v. Gratiot, 14 Pet. 526; 12 Am. and Eng. Ency. Law, 976. As to whether the relation of landlord and tenant exists is to be determined by the agreement in each case. "The words are, that the defendant 'leases, rents and lets' to plaintiff, his farm, and at the end of the time plaintiff is to 'give up possession of said place and all

buildings' to defendant. How could the plaintiff 'give up' or surrender possession, if he was not in possession; and how could the defendant receive from the plaintiff possession, if he was already in the exclusive possession?" Johnson v. Hoffman, 53 Mo. 504. The use of the word "demise" in a lease implies a covenant for quiet enjoyment of possession by the lessee. Maeder v. Carondelet, 26 Mo. 112. The words necessary to create a technical lease according to the established forms of professional conveyancers, were used in this case, and the law implies from the words used a covenant for quiet enjoyment of the premises for the purposes contemplated for the stipulated period. In a weaker case than this, where the premises were merely "leased," and not demised and let, the court declared an implied covenant for quiet possession existed. Hamilton v. Wright, 28 Mo. 199. "Any words showing the intention of the parties that one shall divest himself of the possession, and the other come into it, for a certain time, are sufficient" to constitute a lease. And "a lease is a contract for the possession and profits of land and tenements on the one side, and a recompense of rent or other income on the other." Boone v. Stover, 66 Mo. 430. An instrument, in consideration of a fixed annual rental, "leased and conveyed" for a term of years "all the coal on or under certain described land" and it was held this was a lease. "We have the apt term 'lease' employed; we have the monthly 'recompense of rent' and the 'determinate period' at the expiration whereof the contract ceases by its own express limitation." Austin v. Huntsville, 72 Mo. 535; Clark v. Midland, 72 Mo. App. 58. These authorities firmly establish the leasehold right of the defendant company in the land. Such was the evident construction placed upon it by the parties, for their language could not imply

anything else. The technical words ordinarily used to create a leasehold estate were employed by the parties and the court can not disregard their force, unless a new contract is made by it for the parties. The words used in a written contract are presumed to be those the parties intended and interpretation is given of them accordingly where it is a question as to the legal effect of the contract as it stands. "It is not in the power of courts to make a contract for the parties, but to enforce it just as made." Thornton v. Royce, 56 Mo. App. 179; Broughton v. Null, 56 Mo. App. 251; Johnson Co. v. Wood, 84 Mo. 489. A wife would be entitled to dower in this leasehold. R. S., sec. 4513.

LOREN K. WRIGHT for respondent.

There is but one point in this case as viewed by defendants, to wit: Is the instrument under which defendants hold a lease or a license? "By a lease, the lessee obtains an estate in possession and its products, in respect to which he can maintain ejectment; but in a license or grant of an incorporeal hereditament the grantor does not divest himself of the possession, and the liberty of working a mine or mines on it is not inconsistent with the retention of possession by the grantor." Boone v. Stover, 66 Mo. 434; Foundry & Machine Co. v. Cole, 130 Mo. 6. The instrument from the owners of the fee to A. Hamar is the one that decides this question in this case. Defendants hold under this, and the subsequent writings, under which defendants hold, can not increase the estate nor can they expand from a license to a lease. A licensee can not lease premises held under a license. This instrument is very definite in its terms, and twice very explicitly sets forth the purpose for which it was executed to Hamar.

BLAND, J.—The petition in this cause sought to establish and enforce a mechanic's lien upon the mining plant of the C. C. C. Mining Company and the one acre of ground upon which it is situated, in the county of Lawrence. A short time after the material was furnished and the labor done for which the plaintiff claimed a lien, the C. C. C. Mining Company was, by order of the judge of the Lawrence circuit court, placed in the hands of defendant, L. K. Wright as receiver. Before bringing this suit the plaintiff procured an order from the judge of the Lawrence circuit court permitting him to bring his suit and to make the receiver L. K. Wright a party defendant. The answer of the C. C. C. Mining Company and of the receiver were general denials to the allegations of the petition. The issues were submitted to the court without a jury, who, after hearing the evidence, found that the C. C. C. Mining Company was justly indebted to the plaintiff in the sum of $177.50, and gave a personal judgment against the company for that sum; the court found that there was no lien, and dismissed the petition as to defendant Wright, the receiver. In due time plaintiff filed his motion for new trial; this being overruled, he appealed to this court.

STATEMENT.

The substantial facts are that on January 31, 1896, Mary S. Stotts and others, being the owners in fee of the twenty acre tract of land upon which the C. C. C. mine is located, leased the same in writing for a term of twenty years to the Mt. Vernon Mining Company, for a rental or royalty of five per cent of all mineral substances that should be mined and marketed from the premises, payable monthly. By the same written instrument the Mt. Vernon Mining Company sublet the premises to one Alexander Hamar for a term of twenty years at a rental or royalty of ten per cent of

all mineral substances that should be mined and marketed from the premises, Hamar agreeing to erect on the premises, within reasonable time, a mining plant for the purification of the ores to be mined from the premises, to cost not less than $5,000. Hamar erected this plant according to his contract, and on May 1, 1896, leased about seven acres of the twenty acre tract and the portion on which was a developed lead and zinc mine and the plant erected by him, to one Fred Mergendollar, trustee, for a term of twenty years from January 31, 1896, at a rental or royalty of ten per cent of all mineral substances to be mined and marketed from the premises. On May 8, 1896, Mergendollar assigned his lease from Hamar to the C. C. C. Mining Company, an Illinois corporation. The lease from Mary J. Stotts and others to the Mt. Vernon Mining Company, and the one from Hamar to Mergendollar contained the following clause: "The parties of the first part (the lessors) do hereby demise and let unto the said Mt. Vernon Mining Company, their successors and assigns, on the terms herein named, and for the period of twenty years from the date hereof, unless sooner determined, as hereinafter provided, the above described parcel of twenty acres of land, for the purpose of mining the same for lead and zinc and all other valuable mineral substances with the right to use the surface thereof in any and all ways necessary or proper in carrying on the operations of mining and reducing and preparing for market and marketing any and all ores obtained therefrom, and the right of way thereto over any and all other lands owned or controlled by the parties of the first part." The C. C. C. Mining Company took possession under the Hamar lease and continued to operate it until placed in the hands of Wright as receiver. The plant constructed by Hamar was a substantial frame structure, in which

was permanently fixed shafting for the operation of the machinery, a steam engine, boilers and elevators, and it contained sluice boxes, jigs, rollers and such other machinery and apparatus as were necessary for the separation and purification of lead and zinc ores.    The plaintiff, under a contract made with the superintendent and vice-president of the C. C. C. Mining Company, furnished the material and erected in this plant an elevator at the contract price of $177.50; this elevator was connected with the main shaft in the building, was nailed fast to the frame work

MECHANIC'S lien.

of the building, and was a necessary improvement to the plant.    The C. C. C. Mining Company failed to pay for this elevator, and the plaintiff in due time filed his lien account and declaration to charge the plant with his mechanic's lien.

The trial court refused to establish the lien upon the ground that the C. C. C. Mining Company was not the lessee, but only a licensee of the premises.    This ruling of the learned circuit court is not warranted by the terms of the lease read in evidence.    These leases are as effectual to demise the surface as they are to demise the minerals under the surface.

LEASE not a license.

face.    Kirk v. Mattier, 104 Mo. 23, is decisive of this question, and necessitates a reversal of the judgment as to the receiver Wright.    This being the only point raised by the record, and all other facts necessary to establish the lien being conceded to be in plaintiff's favor, the judgment as to Wright will be reversed and the cause remanded, with directions to the trial court to enter judgment for plaintiff establishing and enforcing his lien according to the prayer of his petition.    All concur.